## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARGONAUT INSURANCE COMPANY | ) <br> ) <br> ) |
| **Plaintiff** | ) <br> ) |
| v. | ) <br> )    **CIVIL ACTION NO. 2:20-cv-117** |
| GENERAL TRADE CORPORATION, SPECIALTY STEAL PRODUCTS, INC., GULF MATERIALS, LLC, GULF TRADING & TRANSPORT, LLC, CLIFFORD C. WISE, AND BARBARA A. WISE | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| **Defendants** | ) |

## <u>PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF</u>

Plaintiff, Argonaut Insurance Company ("AIC" or the "Surety") files this Brief in Support of its Motion for Injunctive Relief.

## I.
## SUMMARY

Under the terms of the Indemnity Agreement, the Indemnitors promised to, upon demand, procure the full and complete discharge of AIC for bonds issued on behalf of the Indemnitor. AIC, as Surety, seeks to have the Indemnitors uphold their contractual promises. Accordingly, because of the contractual promises made by the Indemnitors, this Court should award mandatory injunctive relief by virtue of the Indemnity Agreement without requiring AIC to show all factors traditionally associated with injunctive relief. *See, e.g., Hartford Fire Ins. Co. v. 4-H Ventures,*

*Inc.*, 2008 U.S. Dist. LEXIS 48602 at *11 (S.D. Tex. June 25, 2008)(Upholding parties' agreement that failure to provide collateral constituted irreparable harm). Here, the Indemnitors contractually waived the right to contest the requested relief of AIC and have stipulated that AIC has no "adequate remedy at law." AIC requests this Court to order the Indemnitors to uphold their promises to procure the full and complete discharge of the Surety. In any event, AIC contends that the factors traditionally required for injunctive relief are met in the present case.

## II.
## BACKGROUND[1]

### A. The Indemnity Agreement and AIC's Right to Discharge/Collateralization

In consideration with the Indemnitors execution of the General Indemnity Agreement on December 8, 2017 ("Indemnity Agreement", attached as Exhibit A to the Complaint), AIC issued the Bond requested by the Defendants. (Complaint, Exhibit B.) The Indemnity Agreement provides AIC with, among other things, an unqualified right to request and thereafter have the Indemnitors discharge AIC from the Bonds and/or collateralize any and all remaining liability under the Bonds. In this regard, the Indemnity Agreement provides:

> 12. **Surety's Rights to Release of Bonds and Indemnitors Waiver.** ...[W]ithin thirty (30) days of receipt of the Surety's written demand, the Indemnitors shall procure the full and complete release of the Bond(s) by providing competent written evidence of release satisfactory to the Surety, in its sole discretion. If Indemnitors fail to provide the aforementioned release Indemnitors shall, within an additional seven (7) days, provide the Surety with collateral in the amount of 100% of all unreleased liability under the Bond(s). The liability shall be determined at the time of the Surety's written demand. Collateral will be in the form of (a) an irrevocable letter of credit in form, content, and issued by a financial institution acceptable to the Surety; (b) a pledged money market account, in the form, content, and issued by a financial institution acceptable to the Surety; and/or (c) other collateral in form, content, and

---

[1] In the interest of judicial economy, the Surety incorporates the facts and definitions provided in its Verified Complaint for Injunctive Relief.

> substance acceptable to the Surety, in its sole discretion. Collateral previously
> provided to the Surety may be utilized to establish compliance with this provision. If
> the liability subsequently increases, then it is the Indemnitors' responsibility to ensure
> continued compliance with this provision at all times.

(Complaint, Exhibit A, ¶ 12).

Despite this unambiguous provision, the Indemnitors have refused to procure complete discharge.

Under the Indemnity Agreement, the Indemnitors also expressly acknowledged and agreed that if

the Indemnitors breached its obligation to provide AIC with the requested collateral, AIC would

have no adequate remedy at law, thus entitling AIC to specific performance of that obligation:

> The Indemnitors waive, to the fullest extent permitted by law, each and
> every right that they may have to contest this requirement to provide
> collateral under this Agreement (individually and collectively, the
> "Collateral Requirement"). The Indemnitors stipulate and agree that the
> Surety will not have an adequate remedy at law should Indemnitors fail
> to perform the Collateral Requirement and further agree as a result that
> the Surety is entitled to specific performance of the Collateral
> Requirement. The Surety's failure to act to enforce its right to
> specific performance shall not be construed as a waiver of that
> right, which right may be enforced at any time at the Surety's
> sole discretion....

(Complaint, Exhibit B, ¶ 12)

### B. The Indemnitor's Breach of the Indemnity Agreement

On or about October 18, 2019, AIC determined that the Indemnitors' financial condition

was deteriorating or was believed to be deteriorating and/or that some other change adversely

impacted AIC's risk under the Bond.  Consistent therewith, AIC sent a written demand to

Indemnitors  pursuant to Section 12 of the Indemnity Agreement demanding that within thirty (30)

days of the date of your receipt of the letter, i.e., Monday November 18, 2019, Defendants obtain

and furnish to Surety satisfactory written evidence of the release of the Bond.  Alternatively, Surety

requested collateral in the amount of $1,248, 283.26, which represents the penal sum of the Bond minus the $141,074.97 in collateral already posted. (Complaint Exhibit C).

On or about November 25, 2019, another written demand was sent to Defendants requesting they immediately deposit the requested collateral in the amount of $1,248,283.36. (Complaint Exhibit D). (Letters attached as Exhibit C and Exhibit D hereto are collectively referred to herein as "Demand Letters."). The Indemnitors refused to comply with these demands.

## III.
## ARGUMENT & AUTHORITIES

The Indemnity Agreement states that:

25. **Choice of Law.** This Agreement shall be interpreted under the substantive law of the State of Texas, without giving effect to its choice of law principles.

(Complaint, Exhibit A). Accordingly, both AIC and the Indemnitors agreed that the Indemnity Agreement would be governed by Texas substantive law.

Courts have sustained a right on the part of a surety to sue for specific performance of an agreement to furnish it indemnity, exoneration, and collateralization. *See Wingsco Energy One v. Vanguard Groups Res.*, 1984, Inc., 1989 WL 223756 (S.D. Tex. 1989). When an indemnity agreement is signed, an indemnitor promises to protect its surety. Because the Indemnitors promised to protect AIC, the Surety is entitled to petition the Court to enforce these promises. "At the root of the surety's decision to accept potential liability for its principal's contractual undertakings are both the hope and right expectation" that the surety will suffer no loss. David Slaughter, *Introduction to the Surety's Rights as the Foundation for the Indemnity Agreement, in* THE SURETY'S INDEMNITY AGREEMENT, LAW AND PRACTICE, 2D ED, pg. 8 (Marilyn Klinger, et al, eds., 2008). This bedrock authority is reflected in *United States v. Vahlco Corp.*, 800 F. 2d 462 (5th Cir. 1986):

A guarantor under Texas law is a so-called favorite of the law and as such, a guaranty agreement is construed strictly in favor of the guarantor.

*Id.* at 465.

"Since at least the time of classical Rome, basic legal rights have existed for the protection of sureties." Phillip L. Bruner & Patrick J. O'Connor, Jr., BRUNER & O'CONNOR ON CONSTRUCTION LAW, § 12:97 (2002). Indemnification is an equitable principal of ancient origin that impliedly obligates an indemnitor to reimburse its surety. *Id.* at § 12:99.

## A. Necessities of Injunctive Relief Met by the Indemnity Agreement

When an indemnitor agrees to post collateral but then refuses to perform, courts are not hesitant to require the posting of collateral. *See, e.g., Schwab Ins. Co. v. Schwab*, 739 F.2d 431 at 433–34(9th Cir. 1984); *Marine Midland Trust Co. v. Alleghany Corp.,* 28 F. Supp. 680 at 683–84 (S.D. NY 1939) ("If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced"); *see also Maryland Casualty Co. v. Straubinger*, 19 A.D.2d 26, 29–30, 231 (4th Dep't 1963) (per curiam); *National Surety Corp. v. Titan Construction Corp.*, 26 N.Y.S.2d 227, 230–31.; *Milwaukie Construction Co. v. Glens Falls Ins. Co.*, 367 F.2d 964, 966–67 (9th Cir. 1966); *United Bonding Ins. Co. v. Stein*, 273 F. Supp. 929, 929–30 (E.D. Pa. 1967); *see also Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d 1290, 1321–22 (S.D. Fla. 2008) ("surety's loss of its right to collateralization cannot be adequately remedied through monetary damages"); *Frontier Ins. Co. in Rehab. v. MC Mgmt.*, No. 3:06-CV-597-H, 2009 WL 541301 (W.D. Ky. Mar. 4, 2009) ("requiring indemnitors to post collateral to cover an indemnitee's potential liability is the type of specific relief that courts may require"); *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 921 (E.D.N.Y. 1999); *Ticor Title Ins. Co. v. Middle St. Officer Tower A Assocs.*, 768 F. Supp. 390, 392

(D. Me. 1991); *Safeco Ins. Co. of Am. v. Criterion Inv. Corp.*, 732 F. Supp. 834, 843 (E.D. Tenn. 1989); *Gen. Ins. Co. v. Howard Hampton Inc.*, 185 Cal. App. 2d 426 (Cal. Ct. App. 1960) (holding that specific performance ensures the creditor maintains the security position for which it bargained).

Courts routinely award injunctive relief[2] where—as here—the Indemnitors waived their right to contest this requirement. *See, e.g.*, *Hartford Fire Ins. Co. v. 4-H Ventures, Inc.*, 2008 U.S. Dist. LEXIS 48602 (S.D. Tex. June 25, 2008)("Defendants expressly agreed that the failure to provide the requested collateral constitutes irreparable harm. All of their arguments to the contrary must fall before the plain language of the indemnity agreements."); *Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, 2014 U.S. Dist. LEXIS 49649, 2014 WL 1404473 (N.D. Okla. Apr. 10, 2014); *Great Am. Ins. Co. v. Conart Inc.*, 2006 U.S. Dist. LEXIS 17787, 2006 WL 839197 (M.D. Ga. Mar. 29, 2006)("The [undersigned Defendants] agree that the Surety shall be entitled to injunctive relief for specific performance . . .Therefore, the Court finds that absent enforcement of the Agreement, Plaintiff has no adequate remedy at law.").

Two recent courts have been presented with similarly requested relief by a surety involving not only the same issues, but also similar indemnity agreements. *See Travelers Cas. & Sur. Co. of Am. v. Winmark Homes, Inc.*, 2013 WL 2150920 (11th Cir. May 20, 2013) *and Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, 2014 U.S. Dist. LEXIS 49649, 2014 WL 1404473 (N.D. Okla. Apr. 10, 2014). In *Winmark*, the Eleventh Circuit held that given the "defendants' promise to provide a letter of credit upon demand . . . Travelers is entitled to specific performance in the form of an irrevocable letter of credit and to its attorneys' fees." *Id.* at *4. In *Samson*, the Court held:

---

[2] *See, e.g., Travelers Cas. & Sur. Co. of Am. v. Samson Inv. Co.*, 2014 U.S. Dist. LEXIS 49649, 2014 WL 1404473 (N.D. Okla. Apr. 10, 2014) ("Specific performance is routinely granted to sureties.").

> Under the Indemnity Agreement, Samson also expressly acknowledged and agreed that if Samson breached its obligation to provide Travelers with the requested collateral, Travelers would have no adequate remedy at law, thus entitling Travelers to specific performance of that obligation.

2014 U.S. Dist. LEXIS 49649 at *7-8.

Likewise, Texas courts follow the long line of cases awarding specific performance to sureties. The Court in *Hartford* analyzed an indemnity agreement in which the indemnitors contractually agreed that their failure to post collateral constituted irreparable harm. *Hartford Fire,* 2008 U.S. Dist. LEXIS 48602 at *4. The Court in *Hartford* analyzed an indemnity agreement in which the indemnitors contractually agreed that their failure to post collateral constituted irreparable harm. *Hartford Fire,* 2008 U.S. Dist. LEXIS 48602 at *4. Similarly, here, the Indemnitors contractually:

a) Agreed to procure full and complete discharge of AIC from the Bond;

b) Waived the right to contest this requirement;

c) Stipulated and agreed that AIC has no adequate remedy at law; and

d) Stipulated and agreed that AIC is entitled to specific performance.

*See* Indemnity Agreement, ¶ 12. The Court, therefore, can award mandatory injunctive relief based on the explicit terms of the Indemnity Agreement.

Even if an indemnity agreement is silent, the overwhelming majority of courts find that all requirements for specific performance and injunctive relief are met. *See Liberty Mut. Ins. Co. v. National Pers. of Tex., Inc.,* 2004 WL 583531 at *2 ("Courts have generally granted specific performance to enforce collateral security clauses based on the premise such remedy is required to protect the surety's bargain"). In *Wingsco,* the Court held that by virtue of the written contract for indemnity, a surety is held to a more lenient standard to obtain injunctive relief:

It is not essential that the claim of the surety for relief should depend on the fact that he will incur irreparable injury; nor must he show any fraudulent disposition of property, or the presence of a wrongful purpose, or special reason for fearing loss; and the insolvency of his surety will not preclude him from maintaining the bill.

*Wingsco*, 1989 WL 223756 at *2.

Commentators agree with the *Wingsco* holding: "Inadequacy of remedy and irreparable injury should be presumed from the indemnitors' failure to voluntarily post collateral." Jay M. Mann, *Exoneration and Quia Timet,* in THE LAW OF SURETYSHIP, 2D ED., pg. 471 (Edward G. Gallagher ed., 2000) *citing Wingsco,* 1989 WL 223756. Because the Indemnitors contractually agreed to fully exonerate AIC and procure discharge under the Bonds, this Court should grant its request for an Injunction. *See* Indemnity Agreement, ¶ 12.

## B. Standard for Injunctive Relief, Traditionally

As highlighted above, Texas courts routinely grant injunctive relief compelling indemnitors to provide collateral security to a surety when this obligation has been given in a written agreement of indemnity. *Wingsco*, 1989 WL 223756 at *2–3. Despite the more lenient standard given to sureties, AIC still meets the following three factors which traditionally govern injunctive relief:

1) A cause of action against the Indemnitor;

2) A probable right to the relief sought; and

3) A probable, imminent, and irreparable injury for which AIC has no adequate remedy at law.

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

### a) *A Cause of Action Against the Indemnitors*

In addition to and in conjunction with its Motion for Injunctive Relief, AIC has sued Indemnitors for breach of the Indemnity Agreement and for specific performance of the Indemnity

Agreement. The allegations and causes of action raised in AIC's Verified Complaint for Injunctive Relief are sufficient to satisfy the first element. *Id.*

### b) *A Probable Right to the Relief Sought*

As stated by the *Wingsco* Court, "No single factor in the above-referenced test is necessarily dispositive." *Id.* at *3, citing *Gonzales v. Franklin County Municipal Court*, 595 F. Supp. 382, 386 (S.D. Ohio 1984). "Proper judgment entails a balancing of all of the elements." *Id.* "Usually, this 'balancing' focuses on the irreparable harm in the absence of injunctive relief and the harm to the opposing party as a result of injunctive relief." *Id.*, citing *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.,* 550 F. 2d 189, 195 (4th Cir. 1977). The *Wingsco* Court found that "[i]f there is a strong affirmative showing of one factor, the proof required for the other [elements] diminishes." *Id.*, citing *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). "This is particularly true with respect to the first factor, namely, the substantial likelihood of success on the merits." *Id.*

In recent years, a number of courts have granted the equitable relief requested by AIC under facts and contracts that are substantially the same as those in the present action. What these cases instruct is that based on AIC's unconditional rights and the Indemnitors' specific obligations in the Indemnity Agreement at issue, it is almost certain that AIC will prevail on the merits. AIC is not required to prove a mathematical (greater than fifty percent) probability on the merits. Rather, the question is whether AIC has a "fair chance of prevailing" after discovery and full trial. *Id.* citing, *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less

complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing.").

This Court must interpret the Indemnity Agreement in accordance with the rules of construction of contracts generally. *Assoc. Indem. Corp. v. CAT Contracting*, 964 S.W. 2d 276, 284 (Tex. 1998). Where the obligations of the parties are clear and unambiguously set forth in the indemnity agreement, the court should summarily enforce such indemnification provisions. *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.,* 857 So. 2d 748, 752 (Miss. 2002)("In contract construction cases a court's focus is upon the objective fact – the language of the contract. [A reviewing court] is concerned with what the contracting parties have said to each other, not some secret thought or one not communicated to the other").

In *Great Am. Ins. Co. v. Conart, Inc.*, 2006 U.S. Dist. LEXIS 17787 at *18 (M.D. Ga. March 29, 2006), the court granted a surety's motion for a preliminary injunction, compelling the indemnitors to deposit collateral security with the surety to hold in trust in conformance with the agreement of indemnity.

Given the foregoing, AIC has a substantial likelihood of success on the merits and the second factor is also met.

### c)   *A Probable, Imminent, and Irreparable Injury for which AIC has no Adequate Remedy at Law.*

AIC would continue to suffer irreparable harm if the Indemnitors are not compelled to collateralize it, as the Surety. While the *Wingsco* Court held that "[i]t is not essential that the claim of the surety for relief should depend on the fact that he will incur irreparable injury, the Surety in the present case still meets this requirement. *Wingsco*, 1989 WL 223756 at *2. When the Surety issued the Bond, it relied upon the ability of the Indemnitors to perform under the Indemnity Agreement and thereby protect the Surety from any "Loss", e.g. loss or expense as a result of

having issued bonds for the Indemnitors. The Surety would not have issued the bonds without the financial guarantees in the Indemnity Agreement.

The injunctive relief requested by the Surety would prevent the suffering of an imminent and irreparable injury typically required for temporary injunctions. *See Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). An imminent injury is one that is likely, rather than a mere possibility. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 375–76 (2008). An injury is irreparable if it cannot be prevented or fully rectified by an award of damages at the end of trial, such as when "[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F2d 380, 386 (7th Cir. 1984); *see also Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). By their very nature, the rights to contractual and common law exoneration and collateralization require pre-judgment relief. If such rights cannot be enforced at the inception of an action, but rather must await determination by final judgment, then such rights are meaningless. Should the Court not grant the motion for Injunctive relief, the rights of AIC to contractual and common law exoneration and collateralization will be forever lost. AIC has no adequate remedy at law, and the declaratory and equitable relief sought herein constitutes the only means by which AIC can secure adequate relief and by which furtherance of justice may be served.

It is well-established that the use of injunctive relief is appropriate to protect a surety's contractual and equitable rights. . *Northwestern National Ins. Co. of Milwaukee, Wisconsin v. Alberts*, 937 F.2d 77 (2d Cir. 1991); *Northwestern National Ins. Co. of Milwaukee, Wisconsin v. Barney*, No. C86-3936, 1988 WL 215411 (N.D. Ohio 1988). Numerous courts have held that there is an inherent absence of a legal remedy – and the equally inherent existence of an irreparable injury – where an

indemnitor refuses to perform its contractual and equitable rights. . *See, e.g., United Bonding*, 273 F. Supp. 929 (legal remedy for subsequent damages will not suffice when indemnitor refuses to voluntarily comply with surety's demands); *Milwaukie Constr. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964 (9th Cir. 1966); *Schwab*, 739 F.2d 431 at 433 ("sureties are ordinarily entitled to specific performance of collateral security clauses. If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced"); *Bib Constr. v. Fireman's Ins. Co. of Newark, NJ*, 214 A.D.2d 521 (N.Y.1 App. Div. 1995) ("damage resulting from failure to give security is not ascertainable, and the legal remedy is therefore inadequate"); *Doster v. Continental Casualty Co.*, 268 Ala. 123, 105 So.2d 83 (Ala. 1958) ("it is not necessary for the surety to show any fraudulent disposition of property on the part of the principal or any special reason for fearing a loss").

In *Ockerlund*, the court reviewed an indemnity agreement with provisions requiring the indemnitors to protect the surety against any loss arising by reason of the issuance of the bond which also contained a collateral security agreement. *Travelers Casualty & Surety Company v. Ockerlund*, No. 04-C-3963, 2004 WL 1794915, *1 (N.D. Ill. Aug. 6, 2004). Reviewing the facts before it, the court concluded that the surety would suffer irreparable harm if the injunction did not issue as it would be forced to use its own funds to defend and pay claims despite defendants' promises to protect the surety from this risk, and that by granting the injunction the court was only requiring the defendants to perform the obligations they had contractually agreed to undertake. *Id.* at *4. Here, by refusing to abide by the terms of its Indemnity Agreement, the Indemnitors seek to shift the risk of loss to AIC, in direct contravention of their written promise upon which AIC relied to issue the Bond. .

Additionally, the court in *United Fire* found that the rendition of a judgment for money damages at the end of the case without according a surety the relief of specific performance pursuant to the cited provision of the indemnity agreement is not an adequate remedy and would irreparably harm that surety by depriving it of pre-judgment relief to which it is contractually entitled. *United Fire & Cas. Co. v. Coggeshall Contr. Co.*, No. 91-3159, 1991 WL 169147, *2 (C.D.Ill. Jun. 28, 1991). Most recently, the Court in *Int'l Fidelity Ins. Co. v. Talbot Construction, Inc., et al.*, No. 1:15-CV-3969-LLM (N.D. GA April 13, 2016), the Court found irreparable harm with no adequate remedy at law after holding:

> Protection against this risk to Fidelity is precisely what the collateral security provision was meant to secure, and no amount of future damages provides an adequate remedy to harm resulting from present exposure.
>
> Had Indemnitors fulfilled their promises under the Agreement to pay Fidelity's collateral security demand when it was first made, Fidelity never would have had to use its own funds . . .

*Id.* at *17-18.

Finally, in *Int'l Fidelity Ins. Co. v. Anchor Environmental, Inc.*, the court found irreparable harm, reasoning that "[i]f a plaintiff is deprived of the bargained-for collective security, it will face the risk of being a general unsecured creditor of Defendants and of not being able to collect. To protect Plaintiff from becoming a general creditor, the grant of specific performance to enforce the collateral security provision is warranted." Civ. A. No. 07-04750, 2008 WL 1931004 *7 (E.D. Penn. May 1, 2008).

The rights of discharge and collateral of AIC are absolute under the Indemnity Agreement and the Indemnitors have no reasonable challenge to the legality of that provision. If the Indemnitors are not required by this Court to post collateral sufficient to cover the obligations to AIC under the Indemnity Agreement, it is unlikely that the Indemnitors will retain any ability to satisfy their

contractual promises. This is the risk which the special security provision requiring posting of collateral is designed to avoid and absent its specific enforcement, AIC will be irreparably harmed.

### d) Public Policy Supports AIC's Requested Relief

Additionally, it is evident that the balance of harms in this matter weighs in favor of AIC. If the injunction is denied, there is a likelihood that no assets will ultimately be reasonably available to AIC to satisfy the Indemnitors' contractual obligations. As several courts and treatises have noted, it is well settled that this is a serious harm to a surety. *See Western Cas. & Sur. Co. v. Biggs*, 217 F.2d 163, 165 (7th Cir. 1954); *Conart, Inc., 2006 WL 839197 at *6; Ockerlund*, 2004 WL 1794915 at *5; RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY, § 21.

A grant of injunctive relief will cause no substantial harm to the Indemnitors. It merely requires the Indemnitors to abide by their promises. In the event that this Court does grant the injunction and orders specific performance of the collateral security provision of the Indemnity Agreement, all of the parties will be placed in the position in which they bargained for at the time of the execution of the Indemnity Agreement and the extension of Surety credit. The Indemnitor will be required to perform as it contractually agreed to do, and AIC will receive the collateral security to which it is entitled. *See Ockerlund*, 2004 WL 1794915 at *6.

The Bond issued by AIC is a Mining Bond which is required by the Commonwealth of Pennsylvania Department of Environmental Protection Bureau of Mining Programs ("DEP") as a condition of the Defendant General Trade Corporation's receipt of a permit to operate a coal plant in Indiana County. The Bond is discharged if General Trade complies with a variety of statutes designed to protect the environment. If AIC is not entitled to fulfillment of its contractual, bargained for right to collateral, surety companies will be reluctant to extend surety credit for DEP's use which will negatively impact the development of natural resources in an environmentally

14

responsible way. These activities cannot be bonded on the terms typical in the industry if AIC has no assurance that the protection of its indemnity agreement is not available. The general indemnity agreement represents the foundation of modern suretyship, and its enforcement is essential to the procurement of surety bonds to protect the Commonwealth and its citizens. The *Waterfront Group* court found that "enforcing the collateral security provision of an indemnity agreement in the construction setting serves an important public interest: to encourage sureties to continue to provide bonds for public construction contracts." *Waterfront Group NC*, 2011 WL 4715155 at \*5 (citing *First Nat. Ins. Co. of America v. Sappah Bros, Inc.*, 771 F.Supp.2d 569, 575 (E.D.N.C. 2011)).

Likewise, the Indemnitors agreed to the provisions of the Indemnity Agreement for the express purpose of obtaining various reclamation bonds. Such bonds are required to protect the Commonwealth of Pennsylvania, the public and the environment. Public policy clearly supports protecting sureties, and enforcing the explicit terms of agreements entered into by knowledgeable parties.

AIC is willing to post a bond in the amount the Court deems appropriate.

(Intentionally left blank)

# IV.
# CONCLUSION

For these reasons, Plaintiff, Argonaut Insurance Company, requests that the Court set this

Motion for hearing at the earliest possible time and, after hearing oral arguments, issue an

injunction. Specifically, AIC requests that the injunction:

1. Compel the Indemnitors to perform their specific obligations to procure the full and complete discharge of the Bond; and

2. Compel the Indemnitors to post additional collateral in the amount of $1,248,283.36 in the form of (a) an irrevocable letter of credit issued by a financial institution acceptable to AIC; (b) a pledged money market account issued by a financial institution acceptable to AIC; and/.or (c) other collateral acceptable to AIC.

Respectfully submitted,

DICKIE, MCCAMEY & CHILCOTE, P.C.

BY: /s/ W. Alan Torrance, Jr., Esquire
W. Alan Torrance, Jr., Esq. (PA ID. # 49592)
Bridget K. Sasson, Esquire (PA ID # 316859)
Two PPG Place, Suite 400
Pittsburgh, PA 15222
Tel: 412-281-7272
Fax: 412-392-5367
atorrance@dmclaw.com
bsasson@dmclaw.com

*Counsel for Plaintiff, Argonaut Insurance Company*

Dated: January 24, 2020

9830137.3